ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ROSA MARÍA TORRES SANTOS, <br><br> Recurrida, <br><br> v. <br><br> PURPLE COMMUNICATIONS, INC., <br><br> Peticionaria. | TA2026CE00376 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón. <br><br> Civil núm.: BY2024CV00840. <br><br> Sobre: discrimen en el empleo (Ley Núm. 100). |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 29 de abril de 2026.

En una reclamación laboral sobre discrimen en el empleo por razón de religión y por despido injustificado incoada por la señora Rosa M. Torres Santos (señora Torres Santos), Purple Communications, Inc. (Purple), solicitó la desestimación con perjuicio de las referidas causas de acción mediante una *Moción de Sentencia Sumaria*; ello, tras afirmar que medió justa causa para el despido de la recurrida, y que el mismo no estuvo revestido de un ánimo discriminatorio. La señora Torres Santos se opuso por entender que existen controversias de hechos materiales en cuanto a la razonabilidad de las medidas disciplinarias que le impuso la peticionaria, a las cuales le imputó motivaciones discriminatorias por razón de no pertenecer a la misma religión que la mayoría de los empleados de Purple.

Ante la negativa del foro primario de disponer sumariamente del caso, nos corresponde evaluar si este actuó correctamente al determinar que existían controversias de hechos materiales sobre ambas causas de acción.

Por los fundamentos expuestos a continuación, **expedimos** el auto de *certiorari* y **revocamos** en parte la *Resolución* objeto de este recurso. En consecuencia, desestimamos con perjuicio la causa de acción sobre

discrimen en el empleo, y se mantiene aquella sobre despido injustificado, en la cual persisten algunas controversias de hechos materiales.

I

El 14 de febrero de 2024, la señora Torres Santos presentó una demanda sobre discrimen en el empleo por razón de religión[1] contra Purple[2], la cual fue enmendada[3] posteriormente para incluir una causa de acción sobre despido injustificado[4]. Por su parte, el 27 de junio de 2024, la peticionaria presentó su contestación a la demanda enmendada[5].

Tras varios incidentes procesales[6], el 10 de diciembre de 2025, Purple presentó una *Moción de Sentencia Sumaria*[7], en la que solicitó la desestimación con perjuicio de las dos causas de acción incoadas en su contra.

En cuanto al despido injustificado, alegó que la terminación del empleo de la recurrida se debió a su reiterado incumplimiento con las normas y políticas de Purple, relacionadas a la desconexión injustificada de llamadas[8], a pesar de que dicha exempleada había recibido una acción disciplinaria por tal motivo. Sostuvo que dicho incumplimiento, junto a su expediente disciplinario previo, constituyeron la justa causa para el despido de la recurrida.

---

[1] Al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, intitulada *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146, *et seq*.

[2] Apéndice del recurso, SUMAC TA, entrada núm. 1.

[3] *Íd.*, entrada núm. 8.

[4] Al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, intitulada *Ley sobre Despidos Injustificados*, 29 LPRA sec. 185a, *et seq*.

[5] Apéndice del recurso, SUMAC TA, entrada núm. 13.

[6] Entre estos, ciertas controversias relacionadas al anuncio de testigos en la fecha límite para concluir el descubrimiento de prueba y la exclusión de prueba testifical, las cuales fueron atendidas y resueltas por este mismo Panel I. *Véase*, *Sentencia* del 27 de enero de 2026, en el recurso núm. TA2025CE00942.

[7] Apéndice del recurso, SUMAC TA, entrada núm. 59. La peticionaria fraccionó los anejos a los que alude en su solicitud a través de dos (2) entradas independientes del expediente electrónico. *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 60.

[8] Conforme surge del expediente, Purple es una corporación dedicada principalmente a ofrecer servicios de llamadas telefónicas a través de vídeo para personas sordas o con dificultades auditivas. En particular, la señora Torres Santos laboraba para la peticionaria como intérprete de llamadas por vídeo, en beneficio de los clientes que solicitaban los servicios de dicha corporación. *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 8, a la pág. 2.

En cuanto al discrimen imputado, adujo que la razón del despido no guardó ninguna relación con la religión de la recurrida o con la falta de creencia en otras religiones. Arguyó que la recurrida no contaba con evidencia alguna para prevalecer en sus alegaciones. En la alternativa, planteó que esta causa de acción se encontraba prescrita.

Luego de concedérsele una prórroga, el 9 de enero de 2026, la señora Torres Santos presentó su *Oposición a moción de sentencia sumaria*[9]. En su escrito, arguyó su posición en cuanto a ciertos hechos propuestos por la peticionaria[10] y propuso un total de veinticuatro (24) hechos no controvertidos.

A grandes rasgos, la señora Torres Santos adujo que la prueba documental adjuntada a la solicitud presentada por Purple resultaba contradictoria, lo que demostraba la existencia de controversias de hechos materiales. Afirmó que estas solo pueden dirimirse por el juzgador mediante un juicio en su fondo, con el fin de que se evaluara la credibilidad de los testigos y se determinara las verdaderas intenciones que motivaron su despido.

Además, sostuvo que las medidas disciplinarias impuestas previo a su despido fueron irrazonables. Precisó que, durante la investigación de la última conducta imputada, no se consideraron varios factores presuntamente reportados por ella, los cuales justificaban la desconexión de llamadas. Por ello, insistió en que Purple había basado su despido en su falta de creencia religiosa.

Mientras, el 20 de enero de 2026, ambas partes sometieron el *Informe preliminar entre abogados para la conferencia con antelación a juicio*[11]. En este, consignaron un total de cuarenta y cinco (45) hechos

---

[9] Apéndice del recurso, SUMAC TA, entrada núm. 67.

[10] En específico, aquellos enumerados del 50 al 61, y el número 65, según consignados por la peticionaria en su *Moción de Sentencia Sumaria.*

[11] Apéndice del recurso, SUMAC TA, entrada núm. 71.

estipulados, los cuales se derivaron sustancialmente de aquellos expuestos por Purple en su solicitud de sentencia sumaria[12].

Tras habérsele autorizado, el 2 de febrero de 2026, Purple sometió una réplica a la oposición presentada por la señora Torres Santos[13], con lo cual el asunto quedó sometido ante la consideración del foro primario[14].

El 5 de febrero de 2026, notificada el 6 de febrero de 2026, y enmendada el 9 de febrero de 2026[15], el Tribunal de Primera Instancia emitió la *Resolución* mediante la cual declaró sin lugar la *Moción de Sentencia Sumaria* presentada por Purple[16]. En ella, el foro primario consignó sesenta y tres (63) hechos incontrovertidos[17]. En lo pertinente, calificó como **incontrovertidos** los siguientes hechos:

A. Estipulados por las partes en el Informe sobre Conferencia con Antelación al Juicio.

.        .        .        .        .        .        .        .

4. Como parte de las operaciones de Purple, se recibían un mayor volumen de llamadas en inglés que en español, por lo que había mayor disponibilidad de horas para trilingües que podían cubrir las horas en inglés.

5. Las oficinas de Purple se encontraban en Citi View Plaza, en donde la demandante trabajaba desde un cubículo, el cual no estaba asignado, sino que se sentaba en el que estuviera disponible.

.        .        .        .        .        .        .        .

12. Torres únicamente trabajaba como intérprete de señas, en cuanto al voicing, en español y no procesaba llamadas en inglés.

13. Durante su deposición, Torres declaró que intentó comenzar el proceso para ser una "intérprete trilingüe", pero que no lo completó.

14. Las horas de trabajo en Purple se asignaban primero a los empleados a tiempo completo (full time), luego a los empleados part-time y luego a los flextime, la cual era la

---

[12] Apéndice del recurso, SUMAC TA, entrada núm. 71, pág. 13, nota al calce núm. 8.

[13] *Íd.*, entrada núm. 74.

[14] *Véase*, SUMAC TPI, entrada núm. 75.

[15] El foro primario enmendó su resolución a los únicos fines de eliminar una porción del derecho aplicable en ella expuesta, por no ser pertinente a las controversias planteadas.

[16] Apéndice del recurso, SUMAC TA, entradas núm. 78 y 80.

[17] A base de los hechos estipulados en el *Informe de conferencia con antelación a juicio*, y de los hechos que estimó admitidos por ambas partes en sus respectivos escritos relacionados a la solicitud de sentencia sumaria.

modalidad bajo la que RTS [Rosa Torres Santos] trabajaba.

.        .        .        .        .        .        .        .        .

45. El Sr. Milton Clemente se reunió con Torres el 10 de febrero de 2022 para discutir el tema de desconexiones de llamadas.

B. Hechos no controvertidos al ser admitidos en la Oposición de la Sentencia Sumaria presentada por la parte demandante.

.        .        .        .        .        .        .        .        .

7. Durante su deposición, RTS admitió que en Purple trabajaban personas que pertenecían a la religión de Testigos de Jehová, como también personas que no pertenecían a dicha religión.

8. **De los empleados que trabajaban en Purple, José Beltrán, Paola Ruiz, Lilly Vega, Maggie Crespo, Guillermo Quiñones y Torres no pertenecían a la religión Testigos de Jehová**.

.        .        .        .        .        .        .        .        .

10. **Posterior al despido de RTS, Guillermo Quiñones, Lilly Vega, Paula Ruiz y Maggie Crespo, quienes no son Testigos de Jehová continúan trabajando en la Compañía**.

C. Hechos incontrovertidas por admisión de la parte demandada.

.        .        .        .        .        .        .        .        .

6. Clemente desconoce si Purple investigó sobre lo informado por RTS, durante la reunión del 10 de febrero de 2022, de que un cliente le solicitó que enganchara la llamada.

(Énfasis nuestro).

El foro primario razonó que persistían dudas sobre ciertos hechos materiales, a saber: "si procedía una amonestación en vez del despido, si la alegada investigación arrojó suficientes razones para un despedido justificado, la fecha de recibo de la carta del 'Right to Sue'[18] por [la señora Torres Santos]"[19].

---

[18] Se trata de una carta emitida por la Comisión para la Igualdad de Oportunidades en el Empleo (EEOC, por sus siglas en ingles), mediante la cual la referida agencia federal notifica su determinación de cerrar su investigación en cuanto a los presuntos cargos sobre discrimen en el empleo presentados ante sí. *Véase*, https://www.eeoc.gov/filing-lawsuit (última visita, 22 de abril de 2026).

[19] Apéndice del recurso, SUMAC TA, entrada núm. 80, a la pág.13.

En desacuerdo, el 24 de febrero de 2026, la peticionaria presentó una moción de reconsideración[20], la cual fue declarada sin lugar el 25 de febrero de 2026[21].

Aún inconforme, el 27 de marzo de 2026, Purple presentó este recurso discrecional de *certiorari*, a través del cual formuló los siguientes señalamientos de error:

> Erró el TPI al concluir que había controversias de hechos que impiden la MSS cuando dichas controversias no existen, son controversias de derecho o son inmateriales.
>
> Erró el TPI al denegar la MSS en relación a la reclamación de despido injustificado a la luz de los hechos incontrovertidos que demuestran la justa causa.
>
> Erró el TPI al declarar no ha lugar la MSS en relación a la causa de acción de discrimen por religión cuando Torres no puede establecer un caso prima facie de discrimen ni que la razón legítima no discriminatoria del despido fue pretexto para discriminar en su contra.

(Énfasis y mayúsculas omitidas).

Por su parte, el 16 de abril de 2026, la señora Torres Santos presentó su memorando en oposición a la expedición al recurso.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

## II

## A

Distinto al recurso de apelación, el tribunal al que se recurre mediante *certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo. Véase, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011); *García v. Padró*, 165 DPR 324, 334 (2005). Así, pues, el *certiorari* es un recurso extraordinario cuya característica se asienta en "la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

---

[20] Apéndice del recurso, SUMAC TA, entrada núm. 82.

[21] *Íd.*, entrada núm. 83.

La discreción para entender en el recurso de *certiorari* no se ejerce en el vacío. La Regla 40 del Reglamento de este Tribunal establece los criterios que debemos considerar al momento de ejercer nuestra facultad discrecional; a decir:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 LPRA Ap. XXII-B, R. 40.

Cual reiterado, este Tribunal no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, salvo en "un craso abuso de discreción, o que el tribunal [haya actuado] con prejuicio y parcialidad, o que se [haya equivocado] en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial." *Lluch v. España Service*, 117 DPR 729, 745 (1986). Lo anterior le impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro primario. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

B

La sentencia sumaria es un mecanismo procesal disponible para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de

sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, a las págs. 213 214.

Así, el Tribunal Supremo ha señalado que "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Con relación a los hechos relevantes sobre los que se plantea la inexistencia de una controversia sustancial, la parte promovente "está obligada a desglosarlos en párrafos debidamente enumerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432. Por su lado, la parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *López v. Miranda*, 166 DPR 546, 563 (2005). Así pues:

> […] la contestación a la moción de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos.

> Primeramente, recae sobre la parte que responde el deber de citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente.
>
> De otra parte, puede también el oponente someter hechos materiales adicionales que alegadamente no están en disputa y que impiden se dicte sentencia sumaria. Le compete entonces, similar al proponente, enumerarlos en párrafos separados e indicar la pieza evidenciaria que los apoya con referencia específica al fragmento de esta en que descansa cada aserción. [...].

*SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432.

Dichos requisitos no son un mero formalismo, ni constituyen un requisito mecánico sin sentido. *Íd.*, a la pág. 434. Cónsono con lo anterior, de proceder en derecho, el tribunal podrá dictar "sentencia sumaria a favor del promovente si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada". *Íd.*, a la pág. 432. Así pues, el tribunal tiene "la potestad de excluir los hechos propuestos que no hayan sido debidamente numerados o que no tengan correlación específica a la evidencia admisible que supuestamente los sostiene". *Íd.*, a la pág. 433.

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009).

C

La *Exposición de Motivos* de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley de indemnización por despido*

*injustificado,* 29 LPRA sec. 185, *et seq.* (Ley Núm. 80), establece que el propósito perseguido por el mencionado estatuto es proteger:

> [D]e una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez que otorgue unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido.

*Exposición de Motivos*, Ley Núm. 80, 29 LPRA sec. 185a-185n. Véase, además, *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 424.

La Ley Núm. 80 aplica a aquellos empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin un tiempo determinado; (2) reciban una remuneración; y, (3) sean despedidos de su cargo, sin que haya mediado una justa causa. *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 620-621 (2009).

Debido a su carácter reparador, las disposiciones de la Ley Núm. 80 deben ser interpretadas liberalmente a favor del trabajador. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 428. El Tribunal Supremo ha opinado en reiteradas ocasiones "que bajo las disposiciones de la referida Ley Núm. 80 constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio o capricho del patrono, sino aquella vinculada a la ordenada marcha y funcionamiento de la empresa en cuestión". *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 376-377 (2001).

Sin embargo, la Ley Núm. 80 no proscribe absolutamente la acción del despido. *Íd.*, a la pág. 377. Los patronos poseen la facultad de despedir a sus empleados, por cualquier razón no discriminatoria. *Íd.* Es decir, la Ley Núm. 80 no prohíbe el despido arbitrario o sin causa, sino que se limita a proveerle al trabajador una asistencia económica, para disuadir al patrono de ejercer su prerrogativa. *Íd.*

> Dicho curso de acción como tal se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial. La disposición legislativa en controversia lo que le concede a la persona despedida injustificadamente es una compensación dirigida a ayudarlo económicamente durante la etapa de transición del empleo que ocupaba al que pueda en un futuro conseguir. De ahí entonces que la propia Ley Núm. 80 enumere y defina las

circunstancias que envuelven o se consideren justa causa, esto con el propósito de determinar cuándo el patrono puede ejercer dicha prerrogativa sin tan siquiera tener que satisfacer la mencionada compensación, o mesada.

*Díaz v. Wyndham Hotel Corp.*, 155 DPR, a la pág. 377.

El Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "justa causa". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 424. Dichas circunstancias incluyen motivos fundamentados en la conducta del empleado, así como razones de índole empresarial. *Íd.*

En lo pertinente, el Art. 2 (c) de la Ley Núm. 80, 29 LPRA sec. 185b (c), establece que se entenderá como justa causa para el despido, la "[v]iolación reiterada por [un] empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos haya sido suministrad[a] oportunamente al empleado". [...]. Además, el citado Art. 2 añade en su último párrafo que "[n]o se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". 29 LPRA sec. 185b. *Feliciano Martes v. Sheraton*, 182 DPR 368, 381 (2011).

En ese sentido, la transgresión de las reglas de un patrono podría ser motivo justificado para el despido de un empleado, siempre y cuando: (1) la violación a los reglamentos sea reiterada; (2) las reglas y los reglamentos sean razonables; (3) se suministre oportunamente copia escrita de las reglas y reglamentos al empleado; y, (4) que el despido no se haga por mero capricho del patrono o sin una razón relacionada con el buen y normal funcionamiento del establecimiento. *Íd.,* a las págs. 381-382.

De otra parte, si bien la Ley Núm. 80 no favorece el despido como sanción a la primera falta, esta "'no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran'". *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 931 (2015). (Cita suprimida).

D

La Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como *Ley contra el discrimen en el empleo*, 29 LPRA sec. 146, *et seq.* (Ley Núm. 100), protege a los trabajadores contra diversos tipos de discrimen, entre los cuales se encuentra el discrimen por ideas religiosas. 29 LPRA sec. 146.

Previo a la aprobación de la Ley 4 de 26 de enero de 2017, conocida como *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 121-124 (Supl. 2021) (Ley Núm. 4), el Art. 3 de la Ley Núm. 100, 29 LPRA sec. 148, establecía una presunción de discrimen ilegal cuando el despido hubiera sido efectuado sin justa causa. *Ramos Pérez v. Univisión*, 178 DPR, a la pág. 222. El esquema procesal dispuesto requería que el empleado estableciera: (1) que hubo un despido o acto perjudicial; (2) que la acción del patrono fue injustificada; y, (3) algún hecho que lo ubique dentro de la modalidad de discrimen bajo la cual se reclama. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 888 (2009). Si el empleado establecía un caso *prima facie* de discrimen, el patrono debía "presentar prueba que derrote el hecho básico; esto es, que el despido fue justificado; o destruir el hecho presumido (que el despido no fue discriminatorio); o presentar prueba para atacar ambos hechos". *Íd.*, a la pág. 889.

La aprobación de la Ley Núm. 4 introdujo un nuevo esquema probatorio en los casos en que se reclame al palio de la Ley Núm. 100. En el Art. 5 de la Ley Núm. 100, 29 LPRA sec. 150, se establece que el Secretario del Trabajo y Recursos Humanos tendrá el deber de velar por el cumplimiento de esta ley. En atención a esto, y cónsono con la Ley Núm. 4, que en su Art. 6.2, 29 LPRA sec. 123a (Supl. 2021), estableció que las disposiciones de la Ley Núm. 100 reconocerán lo dispuesto en la legislación y reglamentación federal, el Departamento del Trabajo y Recursos Humanos (DTRH) publicó las *Guías para la interpretación de la*

*Legislación Laboral de Puerto Rico de 8 de mayo de 2019* (Guías para la interpretación de la Legislación Laboral)[22].

Según la interpretación del DTRH, por conducto del Art. 6.2 de la Ley Núm. 4, 29 LPRA sec. 123a (Supl. 2021), en casos donde se reclame al amparo de la Ley Núm. 100, se incorporó el estándar probatorio desarrollado por el Tribunal Supremo de los Estados Unidos en *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973). *Guías para la interpretación de la Legislación Laboral*, a la pág. 157. Cónsono con *McDonnell Douglas Corp. v. Green*, en primer lugar, el empleado tiene que establecer un caso *prima facie* de discrimen. Para establecer un caso *prima facie* se tienen que alegar y probar los siguientes elementos:

> (1) Que la persona pertenece a la clase protegida por la legislación;
>
> (2) que está cualificada para el puesto;
>
> (3) que fue objeto de una acción adversa; y
>
> (4) que se benefició a otra persona que no pertenece al mismo grupo protegido.

*Guías para la interpretación de la Legislación Laboral*, a las págs. 157-158.

Una vez se establezca un caso *prima facie* de discrimen, corresponde al patrono demostrar que hay una explicación razonable o legítima para la acción adversa en contra del reclamante y que no existe ánimo discriminatorio. *Guías para la interpretación de la Legislación Laboral*, a la pág. 158. Véase, *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, op. de 14 de enero de 2025, 2025 TSPR 3, a la pág. 20, 215 DPR ___ (2025).

A estos efectos, el Tribunal Supremo de Puerto Rico aclaró que el patrono no tiene el deber de convencer al juzgador que tal explicación constituya la justa causa para el despido, sino que solo debe presentar evidencia suficiente para sostener que el motivo determinante no fue discriminatorio. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, a la pág. 22-23, citando a *Texas Dept. of Community Affairs*

---

[22] Disponibles en: www.trabajo.pr.gov/docs/Boletines/Guias_Legislacion_Laboral.pdf (última visita, 27 de abril de 2026).

*v. Burdine*, 450 US 248, 254-255 (1981). Si el patrono logra rebatir la presunción, entonces el empleado deberá demostrar, mediante preponderancia de la prueba, que la explicación razonable del patrono es realmente un pretexto para discriminar intencionalmente contra él. *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, a la pág. 25.

El aludido pretexto discriminatorio puede demostrarse "mediante evidencia circunstancial o estadística de otros individuos en la misma situación del demandante que, o bien se les ha discriminado por la misma razón, o bien han sido retenidos precisamente porque no pertenecen al mismo grupo minoritario". *Íd.*, a la pág. 26, citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 303 (1994).

Independientemente de ello, el tribunal podrá emitir una determinación, como cuestión de derecho, a la luz de múltiples factores, entre ellos: "(1) la solidez del caso *prima facie* del demandante; (2) el valor probatorio de la evidencia sobre la falsedad de la explicación del patrono, y (3) cualquier otra evidencia que apoye el caso del patrono y que pueda considerarse adecuadamente". *Jiménez Soto y otros v. Carolina Catering Corp. y otros*, 2025 TSPR 3, a la pág. 26, citando a *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 US 133, 148-149 (2000).

III

Primeramente, subrayamos que la resolución recurrida es producto de una solicitud de sentencia sumaria presentada por Purple. A esos efectos, la jurisprudencia ha establecido que este Tribunal tiene la misma facultad que el foro primario en cuanto a la revisión de la referida solicitud. Así que, al revisar *de novo* la solicitud de sentencia sumaria y su correspondiente oposición, además de concluir que ambas partes cumplieron sustancialmente con las disposiciones de la Regla 36 de Procedimiento Civil, afirmamos que los hechos materiales consignados por el foro primario realmente están incontrovertidos. De esta manera, procedemos con nuestra revisión de los errores señalados por la peticionaria.

Los señalamientos de Purple se pueden sintetizar en dos (2) planteamientos primordiales. En primer lugar, sostiene que las controversias consignadas en la resolución de la cual recurre son realmente controversias de derecho o de hechos inmateriales, las cuales no impiden la disposición sumaria del presente caso a su favor. En segundo lugar, afirma que el foro primario se equivocó al denegar totalmente su solicitud de sentencia sumaria, a pesar de que los hechos incontrovertidos demuestran tanto la existencia de una justa causa para el despido de la señora Torres Santos, como la inexistencia de un ánimo discriminatorio para el mismo.

En cuanto a su primer planteamiento, Purple alega que dos de las controversias consignadas por el foro primario versan únicamente sobre aspectos de derecho, mientras que la restante controversia se circunscribe a hechos inmateriales para la causa de acción de discrimen. En particular, que las controversias sobre si procedía una amonestación en lugar del despido, así como la suficiencia de la investigación para sustentar la justa causa para el mismo, son interrogantes que el foro primario podía contestar al aplicar las disposiciones de la Ley Núm. 80 a los hechos propuestos y a la prueba ya sometida. Arguye que, independientemente de cuándo se recibió la carta de la EEOC, nada impedía que el foro primario decretara que la recurrida no había logrado establecer los elementos requeridos para prevalecer en su causa de acción de discrimen.

Cual citado, un tribunal podrá dictar sentencia sumaria cuando no existan controversias reales sobre hechos materiales y esenciales del caso, y solo si el derecho aplicable así lo justifica. Esto es, si el hecho en controversia pudiese afectar el resultado al aplicarse el derecho sustantivo relevante.

Tras examinar las primeras dos controversias consignadas por el foro primario, concluimos que este no incidió al determinar que las mismas constituían controversias de hechos materiales que impedían la resolución sumaria total del caso de marras. Contrario a lo alegado por Purple,

concluimos que estas no se circunscriben a meras controversias de derecho.

No se trata de una aplicación automática de la Ley Núm. 80 sobre los hechos acogidos por el foro primario, sino de la existencia de elementos subjetivos que no pudieron aclararse con la prueba sometida; ello, debido a ciertas incongruencias o contradicciones en cuanto a algunos aspectos medulares que surgieron de la misma.

En particular, nos referimos al presunto patrón de incumplimiento reiterado a las normas y políticas de Purple - en el cual supuestamente incurrió la señora Torres Santos luego de la advertencia escrita recibida en mayo de 2021-, así como la supuesta gravedad imputada por la peticionaria a dicho incumplimiento para descartar otras medidas disciplinarias previo al despido. Por ello, no procedía dictar sentencia sumaria en cuanto a la causa de acción de despido injustificado.

Respecto a la fecha de recibo de la carta de la EEOC, le asiste la razón a la peticionaria al manifestar que dicha controversia versa sobre un hecho inmaterial a la correspondiente causa de acción. Esta presunta controversia surgió luego de que Purple invocara la defensa afirmativa sobre prescripción en cuanto a la causa de acción al amparo de la Ley Núm. 100. Sin embargo, tal cual discutiremos más adelante, tal hecho por sí solo no afecta el resultado del caso en cuanto a la reclamación por discrimen por religión en esta etapa, en la medida en que el foro primario debía primero auscultar si la señora Torres Santos había logrado establecer un caso *prima facie* en cuanto a esta causa de acción. Por ello, concluimos que el Tribunal de Primera Instancia, en parte, no cometió el primer error señalado.

Así las cosas, la segunda contención de Purple, la cual agrupa los restantes señalamientos de error, es a los efectos de que el Tribunal de Primera Instancia erró al no desestimar sumariamente la totalidad de la demanda enmendada presentada por la señora Torres Santos. Al respecto,

afirma que toda la prueba fundamentaba y favorecía su solicitud en cuanto a ambas causas de acción.

Sobre el presunto despido injustificado, la peticionaria alega que la evidencia demuestra que el despido de la señora Torres Santos se debió a un patrón de conducta, consistente en desconectar reiteradamente las llamadas de sus clientes sin esperar el término requerido, y sin llenar el "reporte" que justificaba tal acción; ello, contrario a lo que establece la política de Purple. Además, aduce que el despido de la recurrida fue también producto de medidas disciplinarias correctivas y progresivas, debido a ciertas amonestaciones verbales y escritas que la señora Torres Santos recibió entre el 2014 y el 2020. A base de estos elementos, razona que cumplió con demostrar la justa causa que requiere la Ley Núm. 80 para despedir a un empleado.

Con relación al discrimen por religión que le fue imputado, arguye que, bajo el esquema probatorio actual, la señora Torres Santos no logró establecer un caso *prima facie* de discrimen en el empleo al amparo de la Ley Núm. 100. Sostiene que la recurrida no aportó evidencia concreta, más allá de su propio testimonio, para establecer que fue víctima de discrimen por sus creencias religiosas[23], y que esa razón hubiera constituido el verdadero motivo para su despido. Afirma que la recurrida se limitó a realizar meras alegaciones basadas en su percepción subjetiva, lo cual no permite inferir que el despido estuviera relacionado con un presunto discrimen.

Reitera que, en la medida en que el despido se derivó del incumplimiento deliberado con sus políticas sobre la desconexión manual de llamadas sin los "reportes" requeridos, Purple contaba con una razón legítima y no discriminatoria que motivó la acción disciplinaria que desembocó en el despido. Alternativamente, insiste en su planteamiento sobre la prescripción.

---

[23] Es decir, por no pertenecer a la organización religiosa Testigos de Jehová.

Por su parte, y sobre su reclamación al amparo de la Ley Núm. 80, la señora Torres Santos sostiene que existe controversia en cuanto a las circunstancias que motivaron la advertencia final. Aduce que su supervisor inmediato nunca examinó las métricas de ejecución ni la amonestó previamente por las llamadas desconectadas. Expone que su supervisor declaró en su toma de deposición que nunca percibió un patrón de incumplimiento incurrido por ella previo a la advertencia final.

Además, afirma que Purple nunca investigó la validez de las razones que le comunicó verbalmente a su supervisor inmediato para justificar la desconexión de llamadas. Alega que el referido supervisor le había planteado a la gerencia de Purple la posibilidad de proceder con una suspensión como paso previo a su despido, debido a que tal proceso disciplinario se había aplicado a otros empleados anteriormente.

La señora Torres Santos aduce que el periodo de meses al que se le imputó el incumplimiento con las normas de la empresa es uno previo a la fecha en que Purple le adiestró sobre las políticas relacionadas a la desconexión de llamadas. Plantea que la peticionaria optó por utilizar su expediente disciplinario para sustentar la terminación de su empleo y justificar el consecuente despido, a pesar de ser remoto y no relacionado a al tema de la desconexión de llamadas.

En cuanto a su reclamación al amparo de la Ley Núm. 100, la recurrida reitera los argumentos sobre su reclamación por despido injustificado, y nos invita a que infiramos que la advertencia final y el despido constituyeron pretextos para discriminar contra ella. Por otro lado, reproduce un recuento fáctico - sustentado exclusivamente en su propia deposición - para exponer que se había quejado de cierto material literario y de unas supuestas conversaciones sobre temas religiosos acaecidas en su área de trabajo. Añade que la mayoría de los empleados de Purple pertenecían a la congregación de los Testigos de Jehová y, como tal, recibían un trato preferencial en cuanto a las horas asignadas y a mejores

oportunidades de trabajo. Por último, negó la prescripción de esta causa de acción.

Conforme al derecho antes expuesto, el nuevo esquema probatorio en toda reclamación por discrimen en el empleo requiere que el empleado establezca, en primer orden, un caso *prima facie* en el cual pruebe los siguientes elementos: (1) que la persona pertenece a la clase protegida por la legislación;  (2) que está cualificada para el puesto; (3) que fue objeto de una acción adversa; y (4) que se benefició a otra persona que no pertenece al mismo grupo protegido.

En caso de lograr este objetivo, y siempre que el patrono logre ofrecer una explicación razonable posteriormente, el empleado deberá demostrar que la razón de la acción adversa fue un pretexto para discriminar intencionalmente contra él o ella. Este aspecto puede demostrarse, por ejemplo, mediante evidencia sobre otros individuos que han sido discriminados por la misma razón que el empleado por estar en su misma situación, o sobre aquellos que han sido retenidos por no pertenecer al grupo minoritario al que alega pertenecer el empleado afectado.

Por otro lado, es norma reiterada que este Tribunal no intervendrá con las determinaciones del Tribunal de Primera Instancia, salvo que este haya incurrido en un craso abuso de su discreción, que haya actuado con prejuicio y parcialidad, o que se haya equivocado en la interpretación o aplicación de alguna norma procesal o derecho sustantivo.

En primer lugar, opinamos que el foro primario tenía todos los elementos para desestimar por la vía sumaria la reclamación de la señora Torres Santos al amparo de la Ley Núm. 100. Veamos.

Luego de que evaluáramos los sendos escritos de las partes litigantes, junto a la prueba que los acompañan, a la luz del esquema probatorio actual, no albergamos dudas de que la señora Torres Santos no logró probar los hechos básicos para configurar un caso *prima facie* de

discrimen, conforme a lo determinado en *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973).

A pesar de que nadie ha puesto en duda las cualificaciones de la señora Torres Santos como intérprete de señas, y que fue objeto de un despido, esta no logró demostrar que las personas que tomaron la decisión de despedirla conocían que esta no pertenecía a los Testigos de Jehová, ni que esa fuera la razón por la cual procedieron con su despido. Asimismo, tampoco pudo establecer que, en efecto, los empleados que pertenecían a los Testigos de Jehová recibían mejores beneficios por el mero hecho de pertenecer a esa congregación religiosa.

Correspondía a la recurrida demostrar aquellos elementos que establecieran un nexo causal entre la clase protegida (i.e., sus creencias o falta de creencias religiosas) y la acción adversa tomada por el patrono (i.e., el despido ocurrido el 22 de mayo de 2022). A esos efectos, no obra en el expediente prueba alguna aportada por la recurrida - más allá de su propia deposición - que demuestre que, en efecto, fue tratada de manera distinta a otros empleados, que existió un patrón de conducta antagónica en su contra o que las razones articuladas por Purple para fundamentar su despido estuvieran basadas en un ánimo discriminatorio.

En un principio, la señora Torres Santos afirmó en su demanda que especulaba que su edad era la razón por las cuales Purple incurría en las supuestas acciones discriminatorias[24]. No obstante, expresó que luego percibió que realmente el presunto discrimen que desembocó en su despido ocurría debido a su falta de creencia en las ideologías de los Testigos de Jehová[25]. Sin embargo, sus alegaciones carecen de una base evidenciaria concreta que nos permitiera corroborar su veracidad. En muchas de las ocasiones en las que indicó que existía una acción

---

[24] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 8, a la pág. 4. A pesar de ello, esta admitió durante su deposición nunca haber formulado una queja por discrimen ante la oficina de recursos humanos de Purple. *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 67, Anejo B, a la pág. 162.

[25] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 8, a la pág. 4; entrada núm. 67, Anejo B, a la pág. 172.

discriminatoria, se limitó a exponer los hechos con meras alegaciones, con una referencia general a extractos de su deposición, en lugar de detallar la evidencia que sostenía su contención.

Como cuestión de hecho, la señora Torres Santos nunca presentó evidencia directa ni circunstancial que creara una inferencia, por mínima que fuera, de que Purple favorecía a los empleados que eran Testigos de Jehová. Por ejemplo, durante su deposición, la recurrida admitió que las horas de trabajo eran asignadas en conformidad a la capacidad interpretativa de cada empleado[26], y que las oportunidades de crecimiento se anunciaban públicamente mediante la página de internet de la compañía[27]. En contraste, la señora Torres Santos no se preocupaba en verificar periódicamente las oportunidades de trabajo que Purple notificaba por medio de su página electrónica[28], ni optó por incrementar los lenguajes que interpretaba para mejorar sus oportunidades de crecimiento[29].

Aún más determinante, la señora Torres Santos no solo admitió que Purple empleaba personal que no pertenecía a la congregación de los Testigos de Jehová[30], sino que reconoció que, tras su despido, la peticionaria retuvo a dichos empleados[31]. Tal hecho quedó incontrovertido ante el foro primario. Además, surge que los empleados de dicha compañía obtienen un mayor flujo de horas y mejores oportunidades de trabajo dentro de dicha empresa, basado en criterios ajenos a cualquier práctica religiosa, como el puesto de trabajo que ocupan y la capacidad interpretativa[32].

---

[26] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 67, Anejo B, a las págs. 184-185, 189-190.

[27] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 67, Anejo B, a la pág. 161.

[28] *Íd.* De hecho, ella admitió que le notificaron de la apertura de ciertas plazas de entrenadora de intérpretes, con lo cual le remitieron el enlace para solicitar, a lo cual la recurrida hizo caso omiso. *Íd.*, a las págs. 140-141. *Véase*, además, apéndice del recurso, SUMAC TA, entrada núm. 59, Anejo B, Parte 2, a las págs. 1-2

[29] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 67, Anejo B, a las págs. 186-187. Inclusive, la señora Torres Santos expresamente admitió que, de ella ser trilingüe, hubiese tenido mayor oportunidad de horas de trabajo. *Íd.*, a la pág. 191. *Véase*, además, apéndice del recurso, SUMAC TA, entrada núm. 59, Anejo B, parte 2, a las págs. 3-5.

[30] *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 67, Anejo B, a la pág. 53.

[31] *Íd.*, a la pág. 170.

[32] *Íd.*, a las págs. 54, 121-122, 190.

Ante ello, no surge de la documentación o de las transcripciones de las deposiciones sometidas por ambas partes razón alguna que nos mueva a concluir que Purple benefició a sus empleados Testigos de Jehová o, inversamente, que discriminara contra aquellos que no pertenecían a dicha denominación religiosa.

Por ende, concluimos que las expresiones de la señora Torres Santos no fueron suficientes para establecer una presunción de discrimen contra ella, ya fuera por razón de la religión que practica o por no pertenecer a los Testigos de Jehová. Ninguna de las presuntas acciones adversas de Purple alude a su ideología religiosa o a su falta de creencia en otras religiones[33]. Estamos convencidos de que, de conformidad con las alegaciones de la recurrida, esta no tiene derecho a la concesión de remedio alguno contra Purple al amparo de la Ley Núm. 100, independientemente de si prosperaba o no la defensa de prescripción invocada por Purple.

A igual conclusión llegaríamos si hubiésemos determinado la existencia de un caso *prima facie* de discrimen. Si bien Purple ofreció prueba para explicar que el despido de la recurrida se debió a un presunto incumplimiento reiterado con sus normas y políticas - lo cual no necesariamente evidencia el despido como uno justificado o injustificado - la realidad es que la única prueba en la cual la peticionaria apoya sus alegaciones no permite una inferencia razonable sobre la presencia de un pretexto para discriminarla por razón de religión. Por consiguiente, opinamos que, al no desestimar la causa de acción por discrimen, el Tribunal de Primera Instancia incurrió en el tercer error señalado.

---

[33] En el ejercicio de auscultar sus alegaciones, notamos que Purple le permitía a la recurrida disfrutar de sus vacaciones en el periodo navideño e, incluso, se le ha permitido decorar su área de trabajo con motivo de dicha festividad, a pesar de que los Testigos de Jehová no reconocen dicha festividad. *Véase*, apéndice del recurso, SUMAC TA, entrada núm. 67, Anejo B, a la pág. 124. Asimismo, ante su queja de la presencia de material religioso en los cubículos, Purple atendió prontamente el asunto para eliminar las pertenencias personales desatendidas. *Íd.*, a las págs. 115-117. Por último, su supervisor inmediato se interesó en conocer y atender su incomodidad con las conversaciones sobre temas religiosos con el fin de resolver dicho asunto. *Véase*, además, apéndice del recurso, SUMAC TA, entrada núm. 59, anejo B, parte 1, a la pág. 70.

Por último, según adelantáramos respecto a la causa de acción sobre despido injustificado, coincidimos con el tribunal *a quo* en que aún persisten controversias medulares sobre la referida causa de acción que requerirán de un juicio plenario. A pesar de ello, tras evaluar con detenimiento las sesenta y tres (63) de hechos no controvertidos contenidos en la resolución objeto de revisión, consideramos que, con ellas, el foro primario adelantó significativamente la resolución de la referida causa de acción. Así pues, concluimos que no medió un craso abuso de discreción ni prejuicio o parcialidad, ni el foro primario se equivocó en la interpretación o aplicación de la Ley Núm. 80, por lo que nuestra intervención sobre la reclamación de despido injustificado, en esta etapa, no se justifica. Cónsono con lo anterior, el Tribunal de Primera Instancia no cometió el segundo error señalado.

IV

A la luz de lo antes expuesto, **expedimos** el auto de *certiorari* y **revocamos** en parte la *Resolución* objeto de este recurso. En consecuencia, **desestimamos con perjuicio** la causa de acción sobre discrimen en el empleo por razón de religión, según incoada por la señora Rosa M. Torres Santos en contra de Purple Communications, Inc.

En cuanto a la causa de acción sobre despido injustificado, determinamos que persisten algunas controversias de hechos materiales, que impiden su resolución sumaria. En su momento, y atendidas las restantes controversias pendientes de adjudicación, el Tribunal de Primera Instancia hará las determinaciones a esos efectos que correspondan.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones